**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 27 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RANDY KARL GOMETZ,

      Petitioner-Appellant,

v.

UNITED STATES PAROLE
COMMISSION,

      Respondent-Appellee.

No. 01-1135

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 97-D-1688)**

---

Howard A. Pincus, Assistant Federal Public Defender (Michael G. Katz, Federal
Public Defender, with him on the brief), Denver, Colorado, for Petitioner-
Appellant.

James C. Murphy, Assistant United States Attorney (John W. Suthers,
United States Attorney, with him on the brief), Denver, Colorado, for
Respondent-Appellee.

---

Before **MURPHY** , **McWILLIAMS** , and **HARTZ** , Circuit Judges.

---

**HARTZ** , Circuit Judge.

---

Randy Gometz (Petitioner) has been in federal prison since receiving a 15-year sentence for bank robbery in 1975. While serving time he has been convicted of several additional crimes, each of which resulted in a sentence to be served consecutively to his other sentences. The offenses, together with the year and length of sentence are as follows: assaulting an inmate (1980, 1 year), assaulting a correctional officer (1981, 3 years), aiding and abetting the murder of a correctional officer (1983, life), assault with a dangerous weapon on a federal officer (1988, 10 years), and possession of contraband in prison (1988, 5 years). He has also been disciplined for well over 100 prison infractions.

In September 1995 Petitioner applied for parole with the United States Parole Commission. The Commission hearing examiner found that under Commission guidelines Petitioner should not be released until he had served a total of at least 430 months, that the release of Petitioner would pose an unwarranted risk to the community, and that his release date should be the subject of a reconsideration hearing in 15 years. The Commission adopted the hearing examiner's recommendation.

Petitioner sought review by the Commission's National Appeals Board, which affirmed the Commission decision. Petitioner then petitioned for a writ of habeas corpus under 28 U.S.C. § 2241. The district court denied the petition, and he appeals to this court, arguing that the Commission improperly applied the

guidelines by (1) designating an assault on an inmate as an attempted murder, (2) designating an assault on a correctional officer as an ordinary assault, and (3) applying some guidelines retroactively.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I.    Background

Because Petitioner was originally sentenced in 1975, his period of incarceration is governed by the federal parole system that predated the Sentencing Guideline regime adopted by the Sentencing Reform Act of 1984.  *See* 1 Neil P. Cohen, *The Law of Probation and Parole* § 5:2, at 5-2 (2d ed. 1999).  Under the parole system, Congress sets the maximum sentence, the judge imposes a sentence within the statutory range, and the Parole Commission determines the actual duration of imprisonment.  *See Mistretta v. United States*, 488 U.S. 361, 365 (1989).

After sentencing, a prisoner receives an initial parole hearing.  28 C.F.R. § 2.12.  Following the hearing the Commission will either (1) set an effective date of parole; (2) set a "presumptive release date," which is contingent on favorable findings at subsequent hearings; or (3) postpone a decision on the prisoner's parole date until another hearing in 15 years (the "fifteen year reconsideration hearing").  28 C.F.R. § 2.12(b).  After the initial hearing the prisoner is entitled to periodic interim hearings.  28 C.F.R. § 2.14.  Depending on the evidence

presented at the interim hearing, the Commission may advance, delay, or even rescind a presumptive parole date, or, in special circumstances, it may advance the date of the 15-year reconsideration hearing. *See* 28 C.F.R. § 2.14(a)(2). When a prisoner who has already had an initial hearing receives another federal sentence, the Commission is to conduct a new initial hearing to "reevaluate the case." 28 C.F.R. § 2.28(c). A prisoner may appeal a decision to the National Appeals Board, 28 C.F.R. § 2.26, which is composed of three members of the Parole Commission, 28 C.F.R. § 2.1(c). The Board may affirm, reverse, or modify the decision, or order a new hearing. 28 C.F.R. § 2.26 (b)(1).

To increase consistency in making parole decisions, the Commission has adopted guidelines that "indicate the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics." 28 C.F.R. § 2.20(b). The guideline ranges "are established specifically for cases with good institutional adjustment and program progress." *Id*. They are not mandatory; decisions are allowed either above or below the guidelines when "the circumstances warrant." 28 C.F.R. § 2.20(c).

Parole prognosis is measured by a "salient factor score," *see* 28 C.F.R. § 2.20(e), which is based on the subject's prior convictions and commitments; the subject's age at the time of the current offense; the subject's recent commitment-free periods; and the subject's status as a prisoner, escapee, probationer, or

parolee when the offense was committed.  *See* 28 C.F.R. § 2.20, ch. 13, subch. B, Salient Factor Scoring Manual.  The computation results in a score between 0 and 10, with 10 indicating the most favorable prognosis.  *See id.*  In special circumstances, however, a clinical evaluation of the prisoner may override the salient factor score.  28 C.F.R. § 2.20(e).  The offense severity is calculated from the prisoner's actual activity rather than the technical offense for which the prisoner was convicted.  *See Lewis v. Beeler*, 949 F.2d 325, 328, 330-31 (10th Cir. 1991) (in setting offense severity level for prisoner convicted of extortion relating to Tylenol murders, Commission could determine that prisoner actually committed the murders).  Offense severity is graded from Category 1 to 8, with 1 being the least severe.  *See* 28 C.F.R. § 2.20, Guidelines for Decisionmaking.

A grid displays the guideline range for the total time to be served for each combination of salient factor score and offense severity category.  For example, for a prisoner whose offense severity is Category 4 and whose salient factor score is 6, the guideline range is from a minimum of 20 months to a maximum of 26, which is represented in the grid as 20-26.  For a prisoner whose offense severity is Category 8 and salient factor score is 3, the guideline range has a minimum of 180 months, with no maximum; this is represented in the grid as 180+.

The guideline range is increased for crimes and administrative infractions committed by the prisoner during confinement.  *See* 28 C.F.R. § 2.36.  Each such

crime or infraction is placed in one of the eight offense severity categories. If the offense is in Category 5, the guideline range increases by 36-48 months; for a Category 8 offense, the guideline range increase is 120+ months.

At Petitioner's initial parole hearing on April 3, 1980, his guideline release date was calculated at 32-40 months, but the Commission determined that he should be confined until the expiration of his sentence because of "numerous incident reports." He received an interim hearing in 1982 but then waived all further hearings until he applied for parole in September 1995. Because of the additional sentences Petitioner had received after his interim hearing, he was entitled to a new initial hearing, which was conducted on April 2, 1996. The hearing examiner rated Petitioner's offense severity as Category 8 and calculated a guideline range of 430+ months; in other words, the time to be served would be at least 430 months, with no maximum. The examiner recommended that setting a release date be postponed until Petitioner's 15-year reconsideration hearing in April 2011, when Petitioner would have served 439 months. The examiner stated, "I would see that [Petitioner] from this point could expect to spend the rest of his life in custody."

Petitioner then appealed to the National Appeals Board. The Board noted 134 incident reports during his federal incarceration and said that the calculation of his guideline range had erroneously omitted six instances of institutional

misconduct, which should have raised the aggregate guideline range to 498+ months. But recognizing its policy not to render a more adverse decision on appeal, the Board treated the guideline range as 430+ months. The Board also affirmed the 15-year reconsideration hearing. We now address Petitioner's three challenges to the Commission's decision.

II.    Analysis

We will not disturb a decision by the Parole Commission "unless there is a clear showing of arbitrary and capricious action or an abuse of discretion." *Sotelo v. Hadden*, 721 F.2d 700, 702 (10th Cir. 1983). "The inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons." *Misasi v. U.S. Parole Comm'n*, 835 F.2d 754, 758 (10th Cir. 1987) (quoting *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir. 1982)). We do not reweigh evidence, make credibility determinations, or substitute our judgment for the Commission's. *Fiumara v. O'Brien*, 889 F.2d 254, 257 (10th Cir. 1989).

A.    *Assault on an Inmate*

Petitioner first argues that the Parole Commission abused its discretion by classifying a 1980 assault on an inmate as attempted murder. Attempted murder is a Category 8 offense, which results in a 120+ month increase in the guideline

range. Petitioner points out that he was prosecuted for the offense and the conviction was for only assault with a deadly weapon with intent to inflict bodily harm. He also stresses that he was not even given the maximum sentence for his conviction. Yet the Parole Commission is not bound by the sentencing court. The Commission can make independent findings of criminal conduct and even consider unadjudicated offenses that are connected to the offense of conviction. *See Lewis*, 949 F.2d at 330. Here, there was a rational basis in the record for the Commission to find that Petitioner was attempting to murder the victim. It took three correctional officers to force Petitioner from the victim after he had stabbed the victim several times and seriously wounded him. This evidence in itself would support the Commission's decision. In addition, the Commission could properly consider the violent disposition displayed by Petitioner during his imprisonment.

B.    *Assault on Correctional Officer*

Petitioner contends that the Commission abused its discretion in classifying his 1995 assault on a correctional officer as an ordinary assault, rather than a minor assault. An ordinary assault on a correctional officer that causes no physical injury is a Category 3 offense, *see* 28 C.F.R. § 2.20, U.S. Parole Commission Offense Behavior Severity Index, ch. 2, subch. B, 212(d)(1)(c), which increases the guideline range by 12-16 months, *see* 28 C.F.R.

§ 2.36(a)(2)(ii). The sanction for minor assaults is usually to postpone parole by 0-60 days. *See* 28 C.F.R. § 2.36(a)(1).

The disciplinary report at the time stated: "[Petitioner] jerked away from [the officer] while he was holding [Petitioner's] cuffs, causing him to smash his fingers in between the handcuffs. Shortly thereafter [Petitioner] said: 'Fuck you. You are a faggot' to the staff member." The Commission's Rules and Procedures Manual explains:

> Certain assaults may be rather minor (e.g. shoving, throwing non-dangerous objects), . . . . Examples: (1) During an argument, a prisoner shoves and verbally abuses another prisoner; . . . (3) A prisoner throws urine at a correctional officer from a cell while in disciplinary segregation.

U.S. Parole Commission Rules & Procedures Manual § 2.36-02(d) (June 2, 1997).

Petitioner claims that his actions were similar to the examples in the Manual. He points out that the Manual treats shoving as a minor offense and includes an assault on a correctional officer as a minor offense. The Commission, however, asserts that Petitioner's behavior is distinguishable because the correctional officer he assaulted was not protected from Petitioner by a wall or similar structure.

"An administrative agency's interpretation and application of its own regulations should be given some deference by the courts." *Sotelo,* 721 F.2d at 702. Example 3 does not say merely that a prisoner throws urine on an officer; it

includes the circumstance that the prisoner is inside a cell while the officer is outside. The Commission could reasonably view that circumstance as being of critical importance, not just surplusage. Given the Commission's expertise, we should defer to its evaluation of the danger of various inmate misconduct. The threat of disorder may well be significantly greater when the prisoner and officer are in direct physical contact than when the prisoner is confined in a cell away from the officer. Because the Commission could rationally distinguish Petitioner's behavior from the examples in the Manual, we hold that there was no abuse of discretion.

C. *Retroactive Application of Guidelines*

Petitioner's final argument is that the Parole Commission abused its discretion by calculating the offense severity category and salient factor score in accordance with the current regulations, rather than the regulations in effect at the time of his initial hearing in 1980, which would produce a more favorable result for him. Under the 1980 guidelines the offenses that produced a guideline range for Petitioner of 430+ months would instead produce a range of 402+.

The Commission contends that it is unnecessary to resolve whether it should have used the guidelines in effect in 1980, because Petitioner was not prejudiced by the retroactive application of the guidelines. We agree.

Petitioner contends that he was prejudiced in two respects by the allegedly

erroneous calculation of his guideline range. First, he asserts that his 15-year reconsideration hearing must be conducted within 48 months of the guideline minimum, *see* 28 C.F.R. § 2.20, Guidelines for Decisionmaking n.1 (Commission must explain any decision to delay release by more than 48 months beyond lower limit of applicable guideline), so a decrease in the guideline minimum could lead to his entitlement to an earlier hearing. He acknowledges, however, that his reconsideration hearing is set for April 2011, when he will have served 439 months, which is less than 48 months after the 402-month minimum that he contends he is entitled to. He therefore rests this claim of prejudice on his being able to prevail on at least one of his other two grounds of appeal, because success on either one would reduce the guideline minimum to more than 48 months less than 439 months. Unfortunately for this argument, we have rejected Petitioner's other two grounds of appeal.

His second claim of prejudice is that "[a] difference of 28 months at the bottom end of the guideline range may not only inform how the Commission exercises its discretion as to whether to set a parole date, but also whether it will accelerate the reconsideration hearing or take other favorable action." We agree with the district court that this possibility is too speculative to support a claim of prejudice. The Commission's regulations state that no guideline range upper limit is set for offense severity in Category 8 (which is Petitioner's category) "due to

the extreme variability of the cases within this category." 28 C.F.R. § 2.20, Guidelines for Decisionmaking n.1. When the guidelines set no upper bound on a prisoner's confinement, the guideline minimum serves only to trigger the requirement that the Commission provide an explanation for a decision to confine the prisoner more than 48 months beyond the minimum, an explanation that may be as simple as "the absence of any factors mitigating the offense." *Id.* Particularly in Petitioner's case, where his history of misconduct in prison suggests that the guideline minimums are essentially irrelevant—"The time ranges specified by the guidelines are established specifically for cases with good adjustment and program progress," 28 C.F.R. § 2.20(b)—a small percentage change in the guideline minimum is unlikely to be of any moment in the Commission's exercise of discretion.

Moreover, as pointed out in the decision by the National Appeals Board, the computation of Petitioner's guideline range erroneously failed to consider six cases of prison misconduct. This misconduct would have raised Petitioner's guideline range from 402 months (giving Petitioner the benefit of his retroactivity argument) to well over 430. The only reason the Board did not increase the minimum guideline level above 430 was its policy of not increasing a guideline level on appeal. As a final consideration, we note that Petitioner is still entitled to interim hearings, so that if exceptional circumstances suggest that he has

become a good candidate for parole, his reconsideration hearing can be moved forward.  *See* 28 C.F.R. § 2.14(a)(2).

In short, we are convinced that it would be an empty gesture to "correct" the guideline range from 430+ to 402+.  Under 28 U.S.C. § 2111, appellate courts are to disregard any alleged errors that "do not affect the substantial rights" of the appellant.  Hence, there is no need for us to determine whether the Commission applied the wrong guidelines.

We AFFIRM the judgment of the district court.